# EXHIBIT A

# STATE OF NORTH CAROLINA

File No. _C GC\S 4572_

_____ Catawba _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff* <br> Triad Packaging, Inc. and Louis Wetmore <br> *Address* <br> P.O. Box 70 <br> *City, State, Zip* <br> Conover        NC     28613 | **CIVIL SUMMONS** <br> ☐ **ALIAS AND PLURIES SUMMONS** <br><br> G.S. 1A-1, Rules 3, 4 |

**VERSUS**

| | |
|---|---|
| *Name Of Defendant(s)* <br> SupplyONE, Inc. | *Date Original Summons Issued* <br><br> *Date(s) Subsequent Summons(es) Issued* |

## To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| SupplyONE, Inc. <br> Business Filings Incorporated, Registered Agent <br> 108 West 13th Street <br> Wilimington        DE   19801 | SupplyONE, Inc. <br> 20 N. Waterloo Road, Suite 200 <br><br> Devon           PA    19333-1458 |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| | |
|---|---|
| *Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)* <br> Law Offices of Matthew K. Rogers, PLLC <br> Matthew K. Rogers <br> P.O. Box 9096 <br> Hickory          NC   28603 | *Date Issued* 12/28/09    *Time* 11:01   ☒ AM ☐ PM <br> *Signature* <br> ☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court |

| | |
|---|---|
| ☐ **ENDORSEMENT** <br> This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement*    *Time*    ☐ AM ☐ PM <br> *Signature* <br> ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 10/01            (Over)
© 2001 Administrative Office of the Courts



STATE OF NORTH CAROLINA

COUNTY OF CATAWBA

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE No.

TRIAD PACKAGING, INC and LOUIS
WETMORE

           Plaintiff,

v.

SUPPLYONE, INC.
Defendant.

COMPLAINT
(COMP)

---

    **NOW COMES** the Plaintiff, Triad Packaging, Inc. (hereinafter, "Triad") and Louis

Wetmore, (hereinafter "Wetmore") (hereinafter collectively, "Plaintiffs") complaining of

Defendant, SupplyONE, Inc. (hereinafter "SupplyONE and/or "Defendant") alleges and asserts

the following claims against Defendant:

### JURISDICTIONAL STATEMENT

1. Plaintiff, Triad Packaging, Inc. (hereinafter, "Triad") is a North Carolina corporation with a registered mailing address at P.O. Box 70, Conover, Catawba County, NC 28613.

2. Plaintiff, Louis Wetmore (hereinafter, "Wetmore") is a North Carolina resident with a mailing address of P.O. Box 2262, Hickory, Catawba County, NC 28603.

3. At all relevant times hereto, Triad's principal place of business was in Catawba County, North Carolina.

4. Prior to the transactions described herein below, Triad was a business in the packaging industry, including without limitation, manufacture and sales of corrugated boxes.

5. Defendant, SupplyONE, Inc. (hereinafter, "SupplyONE") is a Delaware Corporation with a registered mailing address at 108 West 13th Street, Wilmington, DE 19801.

6. SupplyONE is in the packaging industry, including without limitation, corrugated boxes.

*1*

7. At all relevant times hereto, SupplyONE had operations in North Carolina.

8. MVP Capital Partners, LLC (hereinafter, "MVP Capital") is a Delaware Corporation with a registered mailing address at 874 Walker Road, Suite C, Dover, DE 19904.

9. The majority of the real property, personal property and employees subject to the transactions described herein below were located in North Carolina.

10. Negotiations relating to the relevant transactions occurred primarily in Catawba County, North Carolina.

11. Plaintiff Wetmore signed the documents (that are subject of the allegations herein) in Catawba County, North Carolina.

## FACTS

12. SupplyONE's business strategy includes acquiring profitable companies who are recognized leaders in their market areas with excellent customer relationships.

13. SupplyONE's business strategy includes efforts to consolidate at least some smaller regional packaging business through acquisition.

14. In or about November 2007, SupplyONE contacted Plaintiff Wetmore and inquired if SupplyONE could purchase Triad's business.

15. SupplyONE aggressively sought out to acquire Triad's business.

16. Prior to discussions with SupplyONE, Triad was a recognized leader in Triad's market area with excellent customer relationships.

17. Triad provided SupplyONE with an information package regarding confidential Triad business information.

18. Triad provided SupplyONE with operational and financial details prior to any offer from SupplyONE.

19. SupplyONE sought to aggressively acquire Triad.

20. SupplyONE verbally offered to purchase Triad's business.

21. In approximately April 2008, SupplyONE contacted Wetmore and made a verbal offer to purchase Triad.

22. SupplyONE's verbal offer included the price offered by SupplyONE.

*2*

23. Within weeks of accepting the verbal offer, SupplyONE provided Triad with a written Letter of Intent.

24. On or about April 25, 2008, Triad Packaging received a Letter Of Intent (hereinafter, "LOI").

25. SupplyONE (including representatives or agents on behalf of SupplyONE) drafted the LOI.

26. Triad did not draft or negotiate any language in the LOI.

27. At the time of agreeing to the LOI, the acquisition was to close before July 31, 2008.

28. As set forth in the LOI, Defendant was to prepare an Asset Purchase Agreement (hereinafter, "APA").

29. The language in the LOI implies that the APA was to be promptly prepared and supplied to Triad.

30. As set forth in the LOI, SupplyONE was to pay $3,500,000.00 for Triad's business via asset acquisition.

31. Plaintiff Wetmore signed the LOI on April 29, 2008.

32. To the extent materials or information existed, Triad provided all materials and information requested by SupplyONE.

33. SupplyONE had full access to Triad's business information prior to providing an APA.

34. SupplyONE had full access to Triad's information and personnel prior to closing.

35. Defendant did not provide an APA until after Plaintiff requested the APA.

36. Plaintiff requested the APA no later than September 1, 2008.

37. More than four (4) months past before Defendant provided a proposed APA.

38. In early September 2008, SupplyONE notified Triad that SupplyONE would not pay the purchase price identified in the LOI.

39. Such notice was the first notice to Triad that SupplyONE did not intend to purchase Triad as set forth in the LOI.

40. SupplyONE did not provide a draft APA until September 12, 2008 (hereinafter, "Draft APA").

*3*

41. On September 12, 2008, an attorney for SupplyONE provided a Triad representative a draft APA, but stated that SupplyONE had not reviewed the APA, and may provide changes.

42. The statements referenced in the prior numbered paragraph were made to state that the APA was not approved by SupplyONE prior to its submission to Triad.

43. Plaintiff requested changes to the Draft APA.

44. Defendant refused to accept Plaintiff's requested changes to the Draft APA.

45. Defendant insisted on using language proposed by Defendant in the Draft APA.

46. Defendant agreed to only a limited number of changes and provisions suggested by Triad.

47. The APA defines accounts receivable in section 2.1(i).

48. At all times relevant hereto, AP Exhaust was a customer that disputed accounts receivable claimed by Triad.

49. Triad initiated legal proceedings to collect all accounts receivable due and owing by AP Exhaust.

50. Triad also possessed inventory that was manufactured specifically for AP Exhaust.

51. Prior to closing, AP Exhaust was an Asset to be transferred pursuant to the APA.

52. Triad was attempting to negotiate settlement of the AP Exhaust dispute prior to signing the APA.

53. As of the time the majority of the language of the APA was determined, the exact amount of assets and inventory relating to AP Exhaust was not definitively known.

54. Except for changes and limited additions to specific provisions of the Draft APA, all the language of the Draft APA was drafted by SupplyONE (or representatives or agents for SupplyONE).

55. The parties included language in the APA to account for last minute reduction in assets to be transferred and purchase price paid as such related to AP Exhaust.

56. Prior to closing, discussions involving the amount of assets to be transferred included AP Exhaust amounts.

*4*

57. At closing, SupplyONE deducted $142, 432.31 (hereinafter, "AP Exhaust Amount") from the purchase price to reflect that AP Exhaust assets and liabilities were not transferred and were not paid for by SupplyONE.

58. The deduction in purchase price for the AP Exhaust Amount was to result in a reduction in the amount of Assets to be transferred.

59. The APA requires Defendant to use "best efforts" to sell the Inventory purchased.

60. The APA requires Defendant to use "best efforts" to collect all Accounts Receivable.

61. After the language of the APA was determined, closing was scheduled for October 1, 2008.

62. Plaintiff prepared an inventory count as of the end of September 2008 ("September Inventory Number").

63. Plaintiff prepared the September Inventory Number in anticipation of an October 1, 2009 closing.

64. Plaintiffs were ready, willing and able to close effective October 1, 2008.

65. SupplyONE subsequently refused to close on October 1, 2008.

66. SupplyONE unilaterally delayed closing until October 8, 2008.

67. After closing, SupplyONE used purchased Inventory for its own internal purposes ("Internally Used Inventory").

68. After closing, SupplyONE did not attempt to sell the Internally Used Inventory.

69. SupplyONE did not tell Triad that SupplyONE did not attempt to sell the Internally Used Inventory.

70. On or about May 20, 2009, Defendant SupplyONE notified Triad that AR and Inventory as of that date was as set forth in **Exhibit 1**.

71. Prior to May 20, 2009, Plaintiff had not requested independent inventory audit.

72. Prior to May 20, 2009, Plaintiff relied on SupplyONE's representations regarding inventory numbers and accounts receivable collections status.

73. Plaintiff did not agree with SupplyONE's representations regarding inventory and accounts receivable.

74. Plaintiff engaged an accounting firm to perform an inventory accounting.

5

75. The accounting firm confirmed that SuplyONE's representations were incorrect.

76. Triad notified SupplyONE that SupplyONE's representations were incorrect.

77. On or about June 19, 2009, SupplyONE notified Triad that the AP Exhaust Amount would be subject to SupplyONE's claim for uncollectible AR and unsold Inventory.

78. Despite notifying SupplyONE on numerous occasions regarding necessary changes to inventory and accounts receivable numbers, SupplyONE insisted for more than two (2) months that Triad accept SupplyONE's representations regarding accounts receivable and inventory as true.

79. At all times following closing, Plaintiffs performed pursuant to the APA in good faith.

80. At all times following closing, Plaintiffs investigated claims made by SupplyONE in good faith and attempted to determine the truth and/or validity of the claims.

81. SupplyONE does not possess any evidence that Triad has not attempted to perform the terms of the APA in good faith.

82. Upon information and belief, SupplyOne has acquired (whether via asset acquisition or stock purchase) numerous packaging companies in the last five (5) years.

83. Upon information and belief, MVP provides financing and acquisition advice to SupplyONE.

84. Upon information and belief, SupplyONE follows patterns and practices acquiring other companies.

### FIRST CLAIM FOR RELIEF
(Quasi-Contract - Detrimental Reliance – Unjust Enrichment)

85. The allegations alleged in all above paragraphs are alleged herein and incorporated herein by reference.

86. To the extent the LOI is not a binding contract, Plaintiffs relied on the verbal representations prior to the LOI and the written promises made in the LOI.

87. Triad provided consideration to SupplyONE and spent resources in anticipation of closing before July 31, 2008.

88. Upon information and belief, SupplyONE relied on MVP promises and covenants of when SupplyONE made numerous and various representations to Triad.

*6*

89. SupplyONE has been unjustly enriched by its actions, including without limitation, inducing acts and omissions from Triad in anticipation of promises including those set forth in the LOI.

90. Triad's business was harmed due to SupplyONE's representations, acts and omissions, including causing operational management difficulties and causing customer confusion.

91. Triad detrimentally relied on SupplyONE's representations, acts and omission and has been damaged in excess of $100,000.00 and SupplyONE unjustly enriched in an amount exceeding $100,000.00.

## SECOND CLAIM FOR RELIEF
### (Breaches of Contract)

92. The allegations alleged in all above paragraphs are alleged herein and incorporated herein by reference.

93. The APA was a contract entered into by and between the Plaintiffs and Defendant SupplyONE.

94. SupplyONE breached numerous and various provisions of the APA.

95. SupplyONE failed to use best efforts to collect Accounts Receivable.

96. SupplyONE failed to use best efforts to sell Inventory.

97. SupplyONE notified Triad in writing that SupplyONE did not and was not attempting to collect Accounts Receivable.

98. SupplyONE did not provide a form 1060 as required by 6.7(c) of the Asset Purchase Agreement.

99. Triad notified SupplyONE of Triad's desire to mediate apparent disputed differences between the parties.

100. SupplyONE failed to respond to Sellers request for mediation.

101. SupplyONE breached express covenants and implied covenants of good faith and fair dealing.

102. SupplyONE and Plaintiff Wetmore entered into an employment contract.

103. SupplyONE failed to use reasonable business practices and judgment in accepting sales opportunities presented to SupplyONE.

7

104.    SupplyONE's failure to accept sales to customers, including without limitation, Dispozo, are breaches of the Employment Contract including without limitation implied covenants therein.

105.    Triad has been damaged in excess of twenty thousand dollars ($20,000.00) as a result of SupplyONE's breaches of contract.

106.    In the alternative or in addition to monetary damages, to t he extent it is practical, it is possible and Triad elects after discovery, Triad seeks restoring Triad to a position should the breach not have occurred and the parties not entered the contract, that being return of assets and customer contracts.

107.    Plaintiff Wetmore has been damaged by SupplyONE's breaches in such amounts as are to be determined by a jury.

### THIRD CLAIM FOR RELIEF
### (Fraud)

108.    The allegations alleged in all above paragraphs are alleged herein and incorporated herein by reference.

109.    Plaintiffs relied on the verbal and written statements made by SupplyONE in April 2008.

110.    Plaintiffs relied on SupplyONE's representations that an APA would be timely provided and closing would happen before July 31, 2008.

111.    Upon information and belief, at the time of providing the LOI, SupplyONE did not intend to close by July 31, 2008, but rather to delay closing so that SupplyONE could cause operational issues, customer confusion and create circumstances that would allow SupplyONE to reduce the purchase price for Triad's business.

112.    At the point SupplyONE provided the APA, because of representations, acts and omissions of SupplyONE, including presentations made to Triad's employees and representations made to Triad customers, Plaintiff's business was experiencing operational problems and customer concerns.

113.    Due to changes in Triad's business because of the failure to timely provide the APA, representations made by SupplyONE representatives and delays in closing caused by SupplyONE, Triad's business declined and was damaged.

114.    Because of the damages caused to Triad's business, Triad was not able to negotiate fair and rasonable changes to the APA.

115.    SupplyONE covenanted in the APA to use best efforts and represented to Triad after closing that SupplyONE used best efforts to collect Accounts Receivable.

8

116.    Buyer covenanted in the APA to use best efforts and represented to Triad after closing that Buyer used best efforts to sell Inventory.

117.    Triad relied on SupplyONE's covenants and representations regarding sales efforts and collections efforts when it entered into the LOI and APA.

118.    On or about May 20, 2009, SupplyONE informed Triad that certain Inventory was obsolete and certain AR was uncollectable.

119.    Triad questioned the validity of the amounts of Inventory and AR cited by SupplyONE as referenced in the prior allegation.

120.    SupplyONE insisted that SupplyONE's representations were accurate.

121.    Relying on SupplyONE's representations, Triad has spent substantial time, resources and money to collect Accounts Receivable.

122.    Triad has collected AR that SupplyONE identified as uncollectible (hereinafter, "Collectible AR").

123.    Triad submitted the Collectible AR to SupplyONE.

124.    Relying on SupplyONE's representations, Triad has spent substantial time, resources and money to sell Inventory.

125.    Triad has sold Inventory that SupplyONE identified as obsolete Inventory (hereinafter, "Sellable Inventory").

126.    Triad sold at least some of the Sellable Inventory at prices higher than the value of the Inventory as transferred to SupplyONE.

127.    Triad provided the proceeds of the sales of Sellable Inventory to SupplyONE.

128.    During efforts to sell and collect, Plaintiffs learned that SupplyONE did not use best efforts to collect Accounts Receivable or sell Inventory.

129.    During such sales and collection efforts, representatives of SupplyONE notified Plaintiffs that SupplyONE did not intend to sell the Inventory or collect the Accounts Receivable.

130.    After notice of the AR and Inventory issues described above, on or about December 21, 2009, SupplyONE submitted a notice of claim to the Escrow Agent (hereinafter, "Claim Notice") intending that Triad and the Escrow Agent rely on the statements made in the Claim Notice.

*9*

131.   There are numerous false and materially misleading statements and material omissions which are intended to induce reliance of the Escrow Agent and to damage Triad.

132.   Upon information and belief, SupplyONE intentionally induced the LOI based on promises of a quick closing, but SupplyONE never intended to close quickly.

133.   Plaintiffs have been damaged by relying on Defenants materially false and misleading acts, representations and omissions, which were intended to induce reliance and Plaintiffs were damaged in excess of $10,000.00.

134.   Plaintiffs are entitled to punitive damages as permitted by law and statute.

### FORTH CLAIM FOR RELIEF
#### (Unfair Trade Practices)

135.   The allegations alleged in all above paragraphs are alleged herein and incorporated herein by reference.

136.   Following the LOI, and before providing the APA, SupplyONE announced to Triad's employees, customers and suppliers, SupplyONE's intention to purchase Triad.

137.   SupplyONE made this announcement to induce reliance by Triad's employees, customers and suppliers.

138.   Upon information and belief, SupplyONE intended to cause reliance and difficult business conditions at Triad in order that SupplyONE could change the terms of the acquisition and reduce the purchase price.

139.   Upon information and belief SupplyONE intentionally delayed providing the APA and intentionally delayed closing so that SupplyONE could gain an unfair advantage and position of leverage in the acquisition process.

140.   After continuously delaying closing, SupplyONE used it inequitable position of power, and influence over Triad's employees, suppliers and customers to force unfair terms in the acquisition.

141.   Upon information and belief, SupplyONE requires compensation for its acquisitions to be in the form of promissory notes.

142.   SupplyONE required Triad accept compensation in the form of a Promissory Note (hereinafter, "Note").

143.   SupplyONE has yet to pay any interest or principal pursuant to the Note (as that term is used in the Complaint).

*10*

144. SupplyONE cited to Triad a lack of earnings and cashflow shortfalls as reasons for not paying the interest or principal.

145. SupplyONE has acquired at least two businesses during the same time period that SupplyONE has claimed earnings and cashflow shortfalls.

146. Upon information and belief, SupplyONE intended to induce Triad to agree to compensation in the form of a Promissory Note, while not intending to pay pursuant to the terms thereof or without disclosing reasonable likelihood of inability to pay.

147. Upon information and belief, SupplyONE has entered numerous similar transactions and acted in similar manners which acts and omissions amount to an unfair and/or deceptive patterns and practices in commerce by SupplyONE.

148. The transactions discussed herein throughout were in and affecting commerce in the state of North Carolina.

149. The Claim Notice contains false and misleading statements which are intended to deceive the Escrow Agent.

150. The Claim Notice contains false and misleading statements which contain no factual basis.

151. The Claim Notice contains false and misleading statement which have unprovable basis in law or fact.

152. The Claim Notice contains claims such as "rent for unsold inventory".

153. Prior to the Claim Notice, SupplyONE never made a claim to Triad or claim for "rent for unsold inventory" to Triad.

154. "Rent for unsold inventory" is not a claim recognized by the APA or for which SupplyONE would be entitled by law or facts known to SupplyONE.

155. Upon information and belief, the Claim Notice was intended to deceive, and unfairly and deceptively influence dispute resolution between Plaintiffs and SupplyONE.

156. Defendant's breaches of contract have been accompanied by substantial aggravating circumstances which amount to unfair and deceptive trade practices.

157. Defendant's practices were unfair, offended established public policy, were immoral, unethical, unscrupulous and/or had the tendency and/or capacity to deceive.

158. Plaintiffs have been damaged by Defendant's unfair and deceptive trade practices, and is entitled to relief pursuant to N.C.G.S.-75.1 et seq.

*11*

159. Plaintiffs are entitled to compensatory damages in excess of $250,000.00, such damages to be trebled and an award of attorney fees as such are awarded by a jury and permitted by law.

**WHEREFORE,** to the extent not otherwise claimed or prayed for in the above paragraphs, such claims for relief to be incorporated herein by reference, Plaintiffs respectfully pray the Court that:

1. Plaintiffs have and recover from Defendant sums in excess of $100,000.00 which have been proximately caused from Defendant's acts, and omissions, including breach of contract, fraud, unfair and deceptive trade practices and such other compensatory damages to which Plaintiff is entitled to recover or in the alternative (as conditioned above) such other equitable remedy as would put the Plaintiffs in a like position as if the contract were not entered into and subsequently breached;

2. Plaintiffs be compensated for decreased in value of Plaintiff Triad's business that resulted from acts and omissions of SupplyONE following the LOI. Further, Plaintiffs be compensated for the purchase price reduction that occurred because of acts and omissions of SupplyONE;

3. Plaintiff have and recover from Defendant punitive damages in an amount of $250,000 pursuant to G.S. § 1D-1, G.S. §1D-15 and to the extent more, pursuant to G.S. § 75-1 et seq.;

4. Plaintiff have and recover all costs and expenses incurred in attempting to collect accounts receivable, and sell inventory;

5. Plaintiff Wetmore have and recover commissions due and owing from business that SupplyONE reasonably should have accepted;

6. Compensatory damages to be trebled pursuant to N.C.G.S § 75-1 et seq.;

7. Interest measured from the date of first breach of contract, said date being no later than October 8, 2008;

8. The costs of this action, to include reasonable attorneys' fees as permitted by contract and law, be taxed against the Defendant;

9. Attorney's fees pursuant to N.C.G.S. § 6-21.3(b), N.C.G.S. § 75-16.1, and/or as provided in the discretion of the court;

10. Plaintiff have and recover such damages from Defendant as will be determined at trial;

*12*

11. All issues of fact herein be tried by a jury; and

12. For such other and further relief as the Court deems appropriate and just.

This the 28th day of December, 2009.

Matthew K. Rogers
Attorney for Plaintiff
NC State Bar: 29662

OF COUNSEL
LAW OFFICES OF MATTHEW K. ROGERS, PLLC
200 1st Ave. NW, Suite 104
PO Box 9096
Hickory, NC 28603
Telephone: (828) 327-2005
Facsimile: (828) 327-7009

*13*

EXHIBIT 1

**SUPPLY☉NE**



20 N. Waterloo Road, Suite 200
Devon, Pennsylvania 19333-1458
T   484 582 5005
F   484 582 0351

May 20, 2009

Mr. Lou Wetmore
Triad Packaging
409 Thornburg Drive
Conover, NC   28613

Dear Lou,

In accordance with section 2.7(b) of the Asset Purchase Agreement by and among SupplyOne, Inc., Triad Packaging and Durham Box Company Inc. and Louis S. Wetmore, attached is a listing of the Accounts Receivable which remain uncollected 180 days after the Closing.  Also attached is a statement setting forth the value of unsold inventory 180 days after the Closing.

Regarding the obsolete inventory, please provide instructions for its disposition to George Ruth at SupplyOne Rockwell.

Regarding the accounts receivable, we have broken the amount into two columns.  The last column of the report is what we believe to be uncollectable and totals $56,933.69. The column prior shows amounts that are in process and if you agree and are willing to sign an amendment to the Asset Purchase Agreement, we would agree to extend collection efforts for an additional 90 days time to attempt to collect these items.  We believe we have a reasonable chance of resolving these issues in the next few months.

The total of our claim at this time is:

| | |
|---|---|
| Obsolete Inventory Merit Container | $ 94,707.62 |
| Obsolete Inventory Triad Packaging | $ 14,785.74 |
| A/R Outstanding +180 days | $ 56,933.69 |
| | $166,427.05 |

This claim assumes a 90 day tolling on a portion of the outstanding accounts receivable. Should you not agree to this extension our claim is:

| | |
|---|---|
| Obsolete Inventory Merit Container | $ 94,707.62 |
| Obsolete Inventory Triad Packaging | $ 14,785.74 |
| A/R Outstanding +180 days | $112,375.55 |
| | $221,490.70 |

The contract calls for repayment of these items within five business days. If I can be of any assistance, please don't hesitate to call.

Sincerely,

*John Caruso*

John Caruso
Vice President Financial Operations

Attachments

cc:    W. Leith
        J. Keeney
        F. Hammer
        G. Ruth
        D. Morgan
        W. Laughlin
        A. Klinghammer

### THE LAW OFFICES OF
## MATTHEW K. ROGERS, PLLC
P.O. BOX 9096
200 1ST AVENUE, NW, SUITE 104
HICKORY, NORTH CAROLINA 28603
(828) 327-2005/ (FAX) (828) 327-7009
EMAIL: ROGERSMK@MRBIZLAW.COM

VIA CERTIFIED RETURN RECEIPT US MAIL

December 30, 2009

Christopher Reiser                         Ryan Northington
PNC Bank, National Association             MVP Capital Partners
Two PNC Plaza 7th Floor                    204 King of Prussia Road, Suite 240
625 Liberty Avenue                         Radnor, PA 19087
Pittsburgh, PA 15222


John Caruso                                Mr. Andy Klinghammer
SupplyONE, Inc.                            Thompson Coburn, LLP
20 N. Waterloo Road, Suite 200            One US Bank Plaza
Devon, PA 19333-1458                       St. Louis, MO 63101
                                           Via Facsimile and U.S. Mail

RE:     Counter Notice/Objection to SupplyONE's Claim Notice

Dear Gentlemen:

Mr. Klinghamer's letter dated December 21, 2009 references a letter purportedly sent to PNC Bank, National Association as Escrow Agent ("Claim Notice"). The Claim Notice was not provided or enclosed to me. Accordingly, as required by the Escrow Agreement, at this point, I am not in a position to determine if the purported "Claim Notice" is compliant with the Appendix B to the Escrow Agreement. I did receive a document that appears to contain line item analysis of claims made by SupplyONE. Triad Packaging, Inc. and Louis Wetmore (herein together, "Sellers") object to claims as set forth therein. In the event proper notice has been provided, **this letter serves as Sellers' Objection and counter notice.**

Sellers do not believe that the Escrow Agreement requires any further details for Sellers' Objection. Sellers reserve all rights to provide details of Sellers' claims against SupplyONE, only to the extent such are deemed necessary. For the Escrow Agent's information, SupplyONE has previously been supplied with at least some (if not all) of the basis for Sellers' objection, including without limitation correspondence over the course of the last ten (10) months, which correspondence speaks for itself.

If the Escrow Agent needs additional information or desires details of Sellers claims of SupplyONE, then, upon notice to Sellers, such will be promptly provided.

Sincerely,

For and on behalf of Sellers

Law Offices of Matthew K, Rogers, PLLC

Matthew K. Rogers

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement & General Release (this "**Agreement**") is made this ___ day of January, 2010, by and between Lou Wetmore ("Wetmore") and Triad Packaging, Inc. ("Triad") (together, "Plaintiff") as parties on one side, and SupplyONE, Inc. ("Defendant") as party on another side. The signatories to this Agreement will hereafter be referred to jointly as the "**Parties.**"

This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action with respect to the Litigation described and defined below.

### RECITALS

1.      On or about December 28, 2009, Plaintiffs filed Civil Action 09 CVS 4872 in the North Carolina Superior Court for the County of Catawba. The matter was captioned *Triad Packaging, Inc. and Louis Wetmore v. SuppyONE, Inc.* ("**The Litigation**");

2.      Prior to any answer being required, desiring to avoid the time, expense, inconvenience, resources necessary, and uncertainty for litigation, the Parties agreed to settle their differences.

3.      Pursuant to the terms hereof, the Parties desire to resolve and settle all claims which were asserted in or could have been asserted in the Litigation.

**NOW, THEREFORE**, in consideration of the releases and mutual promises contained herein and other good and valuable consideration exchanged between the Parties, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## 1.0     SETTLEMENT

1.1      Within Twenty (20) days of signature by the Parties hereto, Triad and Wetmore will return the Promissory Note dated October 8, 2008 ("Note"), and waive all rights to payment, and waive and release claims for payment of any kind including interest arising prior to the date hereof and relating to the Note.

1.2      Within Ten (10) days of signature by the Parties hereto, the Parties shall submit a jointly approved statement to the Escrow Agent instructing said agent that Escrow Agent to disburse funds as follows:  (1) ONE HUNDRED FORTY SEVEN THOUSAND EIGHT HUNDRED SIXTY ONE DOLLARS AND TWENTY THREE CENTS ($147,861.23) to SupplyONE, Inc.;

and (2) TWENTY SEVEN THOUSAND ONE HUNDRED THIRTY EIGHT DOLLARS AND SEVENTY SEVEN CENTS ($27,138.77) paid to Wetmore.

1.3    Within Ten (10) days hereof, SupplyONE shall assign the rights to and permit Triad to collect (unrestrained in any manner by SupplyONE) the Accounts Receivable identified on **Schedule A** hereto.

1.4    Within Twenty (20) days hereof, SupplyONE shall provide and transfer to Triad the Inventory identified on **Schedule B** hereto in order that Triad sell such Inventory.

1.5    Within Ten (10) days of the execution of this Agreement, and subject to performance of the obligations herein, the Parties shall take such steps as are necessary to dismiss with prejudice the Litigation in its entirety.

## 2.0    COMPROMISE

2.1    The Parties agree and acknowledge that this Agreement is the result of a compromise of disputed claims and is not intended to be an admission by the Parties of any liability, wrongdoing, or responsibility on their part or on the part of their predecessors, successors, assigns, agents, parents, subsidiaries, affiliates, owners, members, shareholders, officers, directors, or employees. Indeed, the Parties expressly deny any such liability, wrongdoing or responsibility.

## 3.0    MUTUAL RELEASES

3.1    In consideration hereof, Plaintiffs on behalf of their predecessors, successors, assigns, agents, parents, owners, directors, officers, employees, shareholders, and attorneys hereby release and forever discharge the Defendants and their predecessors, successors, assigns, agents, parents, owners, directors, officers, employees, shareholders, and attorneys from and against all actions, claims, suits, debts, damages, judgments, causes of action, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state or federal court or state or federal administrative agency or commission, and whether now known or unknown, liquidated or unliquidated, that Plaintiffs now have or may have had, or hereafter claim to have, on behalf of themselves or any other person or entity, at any time prior to and including the date of this Agreement. This release specifically includes, but is not limited to, all claims which were or could have been asserted in the Litigation.

3.2    In consideration hereof, Defendant on behalf of itself, its predecessors, successors, assigns, agents, parents, owners, directors, officers, employees, shareholders, owners, and attorneys hereby release and forever discharge the Plaintiffs and their predecessors, successors,

2

assigns, agents, parents, owners, directors, officers, employees, shareholders, and attorneys from and against all actions, claims, suits, debts, damages, judgments, causes of action, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state or federal court or state or federal administrative agency or commission, and whether now known or unknown, liquidated or unliquidated, that Defendant now has or may have had, or hereafter claim to have, on behalf of itself or any other person or entity, at any time prior to and including the date of this Agreement. This release specifically includes, but is not limited to, all claims which could have been asserted in the Litigation.

3.3     The Parties agree that the above releases of described in Sections 3.1 and 3.2 in no way release or affect, and in no way are intended to release or affect, any claim or potential claim relating to the breach or violation of this Agreement. The Parties hereby agree that the prevailing party in any action to enforce the terms of this Agreement shall be entitled to recover its costs of enforcement including, without limitation, attorneys' fees and court costs. .

## 4.0     REPRESENTATIONS, CONFIDENTIALITY COVENANT

4.1     The Parties represent that they each have full power and authority to execute this Agreement and to carry out the transactions contemplated hereby and that all consents, approvals, orders, authorization, execution, delivery and performance of the Agreement and the consummation of the transactions contemplated herein by the Parties have been taken or obtained, and that this Agreement constitutes a legal, valid and binding obligation between and among the Parties.

4.2     The Parties covenant not to disclose any confidential information, including without limitation any of the terms of this settlement agreement except and to the extent disclosure is required to perform the terms hereof. Further, the Parties shall not disclose or publicize the lawsuit that was filed and be dismissed pursuant hereto unless required by Court order or other disclosure requirement.

## 5.0     MISCELLANEOUS

5.1     This Agreement may be executed in identical counterparts, each of which shall constitute an original and all of which shall constitute one and the same Agreement. Furthermore, the Parties agree to accept signatures transmitted by facsimile as binding provided that the original signatures are delivered to counsel for the other party within ten (10) days of receipt of the facsimile signature

3

5.2    This Agreement may be modified only by a written document signed by the Parties.  No waiver of this Agreement or of any of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

5.3    This Agreement shall be binding upon the Parties hereto, their predecessors, successors, parents, direct subsidiaries, indirect subsidiaries, affiliates, assigns, agents, owners, members, shareholders, directors, officers, employees, representatives, and attorneys.    Each of the signatories of this Agreement represents and warrants that s/he is authorized to execute this Agreement and to bind the Parties hereto.

5.4    The Parties cooperated in the drafting of this Agreement, and in the event that it is determined that any provision herein is ambiguous, that provision shall not be presumptively construed against any Party.

5.5    Any notices required under this shall be served upon the Parties via telecopier and overnight priority mail as follows:

          Notices to Plaintiffs:
               Matthew K. Rogers
               LAW OFFICES OF MATTHEW K. ROGERS, PLLC
               200 First Ave. NW, Suite 105
               PO Box 9096
               Hickory, North Carolina 28601
               Telephone No. 828-327-2005
               Facsimile No. 828-327-7009

          Notices to Defendant:
               Andrew J. Klinghammer
               THOMPSON COBURN, LLP
               One US Bank Plaza
               St. Louis, MO  63101-1611
               Telephone No. 314-552-6171
               Facsimile No. 314-552-7171

      Either of the Parties may change the party to whom notices must be sent by giving written notice of such change as required by this section.

5.6    The Parties agree that executed copies of this Agreement shall be valid and binding in the event that the original executed Agreements are missing.

4

5.7     This Agreement shall be governed, in all respects, by the laws of the State of North Carolina, irrespective of its choice of law rules.

5.8     The parties agree that the facts of this Agreement as well as the terms and conditions of this Agreement, are strictly confidential and will not be disclosed except as specifically set forth herein or as may be compelled by law or court order, or as required by any submissions to taxing or other governmental authorities, or in response to a subpoena or to any governmental inquiry or investigation.  In the event that disclosure is required, the Parties shall provide prompt written notice in accordance with paragraph 5.5 above.

          **IN WITNESS WHEREOF**, we have hereunto set our hands and seals as of the date above written.

Triad Packaging, Inc.

_____          _____
Louis Wetmore                                           Date

_____          _____
Louis Wetmore                                           Date


SupplyONE, Inc.

_____          _____
Print Name: _____          Date
Title: _____

5

**Schedule B**

**Merit Inventory**

| Customer | Spec # | Triad Accepts |
|---|---|---|
| National Electric Carbon | Z18395 | $986.96 |
| | Z18396-1 | $635.30 |
| | Z18397-1 | $340.20 |
| Wilheit Packaging | Z18399-1 | $2,740.42 |
| | Z18401-1 | $3,660.00 |
| | Z18517-1 | $3,565.84 |
| | Z18680-1 | $3,438.60 |
| National Electric Carbon | Z18446 | $146.28 |
| | Z18447-1 | $334.05 |
| Expedx- Greenville | Z18522-1 | $1,091.58 |
| | Z18586-1 | $0.00 |
| BMG Direct Marketing | Z18697-1 | $572.73 |
| | Total | $17,511.96 |

**Triad Inventory**

| Customer | Spec # | Triad Accepts |
|---|---|---|
| Draka Comteq | Z18728-1 | $565.42 |
| | Z18733-1 | $762.52 |
| Expedx | Z18723-1 | $304.71 |
| | Z18743-1 | $1,686.91 |
| Thomasville | Z18535-1 | $290.42 |
| Welsh Paper | Z18094-1 | $589.90 |
| | Z18095-1 | $755.68 |
| | Z18210-1 | $1,169.63 |
| Woodsmith's | Z18719-1 | $584.40 |
| Gerrisheimer | Z18734-1 | $76.55 |
| | | $6,786.14 |
| | GRAND TOTAL | $24,298.10 |