IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO. 5:10CV5-RLV

| | |
|---|---|
| TRIAD PACKAGING, INC., and ) <br> LOUIS WETMORE, ) <br>     Plaintiffs, ) <br> ) <br>     v. ) <br> ) <br> SUPPLYONE, INC., ) <br>     Defendant / Third-Party Plaintiff, ) <br> ) <br>     v. ) <br> ) <br> DURHAM BOX COMPANY, ) <br>     Third-Party Defendant. ) <br> _____ ) | **Memorandum and Order** |

**THIS MATTER** is before the Court upon competing renewed Motions for Judgment as a Matter of Law pursuant to Rule 50 of the Federal Rules of Civil Procedure as well as corresponding Motions for Entry of Judgment filed pursuant to Rule 54(b). (Docs. 139, 146; Docs. 141, 148). A hearing was held on August 6, 2013 to provide an opportunity for oral argument.[1]

After the above-referenced post-trial motions were scheduled for oral argument, Plaintiffs' counsel submitted a motion entitled, "Motion for Judgment Conforming with the Evidence," pursuant to Rules 50, 54(b), 56, and 59.[2] (Doc. 155).

---

[1] The Court's Memorandum and Order dated February 19, 2013, provides a more detailed description of the sequence of events that led to initiation of the lawsuit, the procedural history of the case, and the pertinent portions of the APA.

[2] Plaintiffs filed a similar Motion in Limine asking the Court to allow Plaintiffs to amend their pleadings consistent with the evidence presented during the jury trial. (Doc. 114). The newly filed motion warrants little discussion, and is denied, in that Plaintiffs seek in part to resuscitate certain causes of action previously dismissed at summary judgment. Moreover, Plaintiffs ask the Court to treble Plaintiffs' total damages award pursuant to N.C.G.S. § 75–1.1 – a claim heretofore found to be deficient

# I.

On October 8, 2008, Plaintiffs[3] and Defendant entered into an Asset Purchase Agreement ("APA") whereby Defendant (the Buyer) purchased the assets of Plaintiffs' (the Sellers) businesses for the sum of approximately $3,094,350. The APA incorporated several agreements or writings referred to as "Transaction Documents."[4]

The APA also provided for post-closing adjustments to the purchase price 180 days after the closing if warranted. Under Section 2.7 of the APA, the need for adjustment to price depended in part upon the value of the assets (including Accounts Receivable and Inventory) actually delivered by Plaintiffs to Defendant, as well as Defendant's success in these two areas (collecting on Plaintiffs' prior Accounts Receivable and selling Inventory) during the 180-day period.

Relevant to the instant motions, the APA called for a portion of Defendant's payment to Plaintiffs to be made in the form of a Promissory Note (the "Note"), one of the Transaction Documents. Under the terms of the Note, payment was to be made by SupplyOne (the "Maker") to Mr. Wetmore (the "Holder") in the principal sum of $100,000, plus quarterly interest

---

as a matter of law under Fed. R. Civ. P. 56. Plaintiffs contend, unconvincingly, that a treble award is permissible under § 75−1.1 even though the unfair and deceptive trade practice claim was not tried before the jury because the Court is ultimately tasked with the responsibility of determining as a matter of law whether the conduct at issue rises to the level of a statutory violation.

[3] Unless otherwise stated, reference within this Memorandum and Order to "Plaintiffs" or "Triad Packaging" is meant to encompass Triad Packaging, Inc., Louis Wetmore, and Durham Box Company (nominal Third-Party Defendant).

[4] The Transaction Documents were identifed as the Escrow Agreement, a Lease Agreement, Employment Agreements providing for Wetmore and others to become SupplyOne employees, a Convertible Unsecured Subordinated Promissory Note (the "Note"), and Subordination Agreements related to that Note. At the close of the evidence, Plaintiffs proposed that the Court likewise treat the "Funds Flow Memorandum," which was received in evidence, as a Transaction Document and instruct the jury accordingly. (5/22/13 Tr. 39). The Funds Flow Memorandum, which was intended to reflect the actual flow of funds pursuant to the asset purchase, was prepared and executed by the parties in conjunction with execution of the APA.

payments calculated at 7% per annum beginning January 2009. (Note at 2, ¶ 3). The Note expressly stated the date of maturity as October 8, 2013, with the principal amount being due to Mr. Wetmore in increments of $5,000 payable quarterly, together with accrued interest, and all sums coming due October 31, 2013. (Note at 2, ¶ 2).

In addition, as required by another Transaction Document, the Escrow Agreement, the Buyer deposited the sum of $175,000 into escrow. This fund is described in the Escrow Agreement as "a portion of the consideration to be paid to Sellers under the Asset Purchase Agreement in order to provide a source of funds from which Buyer may obtain certain amounts payable to Seller or Buyer (whichever the case may be) pursuant to the terms of the APA."[5] Essentially, it would facilitate the adjustments to price contemplated by the APA. The Escrow Agreement expired in January 2010. However, the escrow money is still being held in an interest-bearing account by the Escrow Agent, PNC Bank. As of the August 6, 2013 hearing date, no accounting of the escrow fund had been done, and no monthly statement as required by Paragraph 6 of the Escrow Agreement has been made available to the Court.

When application of the post-closing adjustments to price gave rise to the instant dispute, the parties ceased to perform under the APA. SupplyOne made only one or two interest payments as required under the Note, but then suspended such payments. The escrow purchase money in the principal amount of $175,000, with accrued earnings less fees and expenses of PNC Bank, has not been paid to Mr. Wetmore or otherwise disbursed.

On December 28, 2009, Plaintiffs commenced litigation in the North Carolina General Court of Justice, Catawba County Superior Court, bringing claims against Defendant for unjust enrichment, breach of contract, fraud, and unfair and deceptive trade practices, N.C. GEN. STAT. §

---

[5] The jury's verdict finding in favor of Plaintiffs appears to recognize this responsibility of the Buyer [SupplyOne] when it referred to the escrow funds as "held by defendant." (Plaintiffs' Verdict, 2).

3

75-1.1. (*See Triad Packaging, Inc. and Louis Wetmore v. SupplyONE, Inc.*, Case No. 09 CVS 4872). On January 28, 2010, Defendant removed the case to this federal court based upon diversity jurisdiction, answered the Complaint, and responded with Counterclaims alleging breach of contract and breach of warranty against the two corporate entities, Triad Packaging and Durham Box Company.[6]

At summary judgment, the issues for trial were significantly narrowed by dismissal of Plaintiffs' claims alleging unjust enrichment, fraud, and unfair and deceptive trade practices.[7] (Doc. 100). In other words, the issues for trial were limited to determining the rights and obligations of the parties via application of the APA consistent with North Carolina contract law, including the implied covenant of good faith and fair dealing.

The parties' contractual claims were tried before a jury in May 2013. During trial, there was evidence presented by both sides of the opposing party's breach of at least one provision of the APA. While the parties invested in preparing a comprehensive agreement by way of the APA, the evidence at trial demonstrated that the parties effectively abandoned the prescribed APA procedures for resolving post-closing disputes. This evidence is reflected in the jury's verdicts finding breach by both parties and awarding partially offsetting contractual damages to both sides.

---

[6] Defendant elected not to proceed on its breach of warranty claims at trial and those claims were dismissed prior to submission of the case to the jury.

[7] Plaintiffs' unjust enrichment claim asserted that a contract should be implied in law so as to enforce the April 2008 Letter of Intent and the original purchase price of $3,500,000. Plaintiffs' fraud claim was premised upon the notion that Mr. Wetmore was under duress and coerced into signing the APA following the several delays in closing, and after the purchase price was renegotiated in September 2008. Despite the Court's ruling, Plaintiffs' counsel stubbornly persisted in his efforts to get to the jury the dismissed cause of action premised upon the difference between the original negotiated purchase price set forth within the Letter of Intent and the final price reflected within the APA.

The same damages instructions applied to Triad Packaging's claim for breach of contract and SupplyOne's breach of contract counterclaim. The Court explained how "actual damages" are defined and calculated.[8] The jury was specifically instructed that actual damages, if any, "refer only to such as may derive from the Asset Purchase Agreement and the other Transaction Documents."

While the existence of the Escrow Agreement and its purpose was made known to the jury during trial, there was no claim of breach as such of the Escrow Agreement presented to the jury.[9] Similarly, the Promissory Note was not squarely before the jury. This matter was tried in May 2013 – approximately six months before the Note was scheduled to mature as to principal. After some debate, the parties agreed that performance under the terms of the Note was not squarely before the jury for any fact-finding since the Note had not matured and there could be

---

[8] The relevant excerpts of the Court's instructions read:

> A person damaged by a breach of contract is entitled to be placed, insofar as this can be done by money, in the same position he would have occupied if there had been no breach of the contract.
> The party establishing breach of contract, if any, may be entitled to recover actual damages. This means that the party with the burden of proof must prove, by the greater weight of the evidence, the amount of actual damages sustained as a result of the breach.
> Actual damages refers to the fair compensation to be awarded to a person for any economic loss or injury resulting from a breach of contract.
> In determining the amount, if any, you award the party with the burden of proof, you will consider the evidence you have heard as to that party's economic loss or injury.
>
> ***
>
> Damages are to be reasonably determined from the evidence presented. The party seeking damages is not required to prove with mathematical certainty the extent of the financial injury in order to recover damages. Thus, the party with the burden of proof should not be denied damages simply because they cannot be calculated with exactness or a high degree of mathematical certainty. However, an award of damages must be based on evidence which shows the amount of a party's damages with reasonable certainty. You may not award any damages based upon mere speculation or conjecture.

[9] Prior to jury charge (and deliberations), the parties agreed that disposition of the escrow monies would be for the Court consistent with the jury verdict. (5/22/13 Tr. 36–37).

5

no breach of its terms.[10]

Notwithstanding this agreement, Plaintiffs' counsel inexplicably proceeded to argue in his closing that SupplyOne owed Triad monies pursuant to the Note's terms. Specifically, Mr. Rogers referred to a letter admitted into evidence dated May 6, 2009, proposing how the escrow money should be distributed ($123,571 to Mr. Wetmore and $51,429 to SupplyOne). Mr. Rogers also argued that Mr. Wetmore should be paid for "the unpaid amount of the promissory note ***accelerated for the breach*** of $129,977."[11] (5/22/13 Tr. 129) (emphasis provided).

In an effort to counterveil counsel's improper argument, and prevent confusion by the jury, and after conferring with counsel, the Court explicitly instructed the jury not to award damages based upon the Promissory Note and its terms. (5/22/13 Tr. 135). The jury was instructed as follows: "[Y]ou are instructed that if damages are awarded to Triad Packaging on any of its claims of breach by SupplyOne, you would not include any amount of damages with respect to the promissory note, which you'll recall was a $100,000 note with interest, because that is a matter to be handled apart from the decision of the jury." (5/22/13 Tr. 151).

On May 23, 2013, after seven days of evidence and nearly ten hours of deliberations, the jury returned verdicts in favor of both Triad Packaging and SupplyOne on their breach of contract claims (and counterclaims) against each other. The jury explained its verdict by categorizing the nature or source of the award. The jury categorized damages due Plaintiffs as either "contractual damages" or payable from escrow. (Plaintiffs' Verdict, 2).

---

[10] On the record, SupplyOne's counsel stated SupplyOne's intention to pay the entire amount due under the Note in the event the jury found against SupplyOne on its Counterclaim. During the charge conference, the parties represented that they were in agreement on this issue – that the jury was not to award any amount of damages with respect to the Note.

[11] In final argument, Mr. Rogers continued to use the term "breach" when discussing the Note. (5/22/13 Tr. 132).

6

On Triad's verdict form, the jury found breach by SupplyOne yet denoted damages in part as $123,271 with the term "escrow" written beside it. (Plaintiffs' Verdict, 2). Issue 1b of the Triad verdict posed the question: "What amount of damages, if any, has Triad Packaging sustained as a result of SupplyOne's breach of contract?" *Id*. The figure written in the underlined space for the damages award – ($_____) – was $334,934. *Id*. There was a bracket symbol ( { ) drawn to the right explaining:

> "escrow $123,271 held by defendant to be pd.
> contractual damages $211,363 to Triad *"

*Id*.[12] Below that entry, identified by the corresponding or matching asterisk (*) was the note "*This assumes the promissory note of $129,977 be paid."

After reviewing the verdict and consulting with trial counsel, the Court requested that the jury further clarify its verdict in this respect. The Court specifically pointed the jury to their response on the Triad verdict to the question: "What amount of damages, if any, has Triad Packaging sustained as a result of SupplyOne's breach of contract?" (5/23/13 Tr. 1537). Noting that the jury broke the figure out and labeled one sum "escrow" and one "contractual damage," the Court then asked for additional indication as to what the $123,271 represents, or "what claim that sum relates to." *Id*. The jury was reminded that its answer must also be unanimous. *Id*. Upon returning to the courtroom, the jury presented the Court with a handwritten attachment to the original Triad verdict sheet stating:

> Monies requested by ∏ [Plaintiff] in escrow of $123,571 be paid.
>
> Damage for breach of contract of $211,363 be paid to ∏ [Plaintiff]

---

[12] The jury appears to have made a clerical error and then subsequently corrected itself. The jury first identified the escrow amount to be disbursed to Plaintiffs as $123,271. The jury's follow-up handwritten explanation or supplement to the verdict identified Plaintiffs' portion of the escrow funds as $123,571 in two different locations on the attachment. Because the latter amount is the exact figure Plaintiffs' counsel requested, the Court finds it most likely that the jury adopted Plaintiffs' counsel's argument and thereby intended to apportion $123,571 of the escrow fund to Plaintiffs.

7

>We were instructed not to consider the promissory note (we think) of $129,977 paid.
>
>| Total to Δ [Defendant] | 194,921 true-up |
>| --- | --- |
>| | 65,474 A. Rec. |
>| | 72,210 Inventory |
>| | 332,605 |
>
>| Total paid to Plaintiff: | 123,571 escrow |
>| --- | --- |
>| | 211,363 damage |
>| | 129,977 promissory note |
>| | 464,911 |

(Plaintiffs' Verdict Attachment). Thus, it seems that the jury understood not to consider and award damages based upon the Note, but assumed that the Note would be paid. The jury's attachment, as seen above, also gave insight into its verdict in favor of Defendant, showing how it reached the total of $332,605.

The legal inquiry for this Court includes determining: 1) whether the damage awards were sufficiently supported by the evidence; and 2) whether final judgment can be entered consistent with the individual verdicts rendered.

Reminiscent of the summary judgment arguments, the parties, through counsel, overstate the strength of their own evidence, and understate that of their opponent, in suggesting their proposed versions of the judgment to be entered.

## II.

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, judgment as a matter of law is appropriate if, under the controlling law:

> "[A] party has been fully heard on an issue during a jury trial and ***the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue*** . . . ."

Fed. R. Civ. P. 50(a). Rule 50 likewise permits a litigant to renew a motion for judgment as a

8

matter of law after the jury renders its verdict. Subsection (b) provides:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
> (1) allow judgment on the verdict, if the jury returned a verdict;
>
> (2) order a new trial; or
>
> (3) direct the entry of judgment as a matter of law.

"The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(b).

"A Rule 50 motion for judgment as a matter of law is subject to the same standard as a motion for summary judgment." *Brown v. Hillcrest Foods, Inc.*, No. 3:02CV449, 2006 WL 3359487 (W.D.N.C. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir.2002)). Thus, in considering each party's motion, the Court must view the evidence in the light most favorable to the nonmovant, and draw all reasonable inferences in that party's favor, without weighing the evidence or assessing the witnesses' credibility. *Brown*, 2006 WL 3359487 (quoting *Dennis*, 290 F.3d at 644-45) (citing *Baynard v. Malone*, 268 F.3d 228, 234 (4th Cir.2001)). The jury's verdict may only be set aside "if a reasonable jury could only rule in favor of [the movant]. *Id.* (citing *Sales v. Grant*, 158 F.3d 768, 775 (4th Cir.1998)); *Anderson*, 477 U.S. at 250. If reasonable minds could differ, the jury's verdict must stand. *Id.* For this reason, the Court considers the parties' respective motions – and the evidence presented – in the light most favorable to the non-moving party. *Id.*

The Court will uphold a damage award "unless no substantial evidence is presented to support it, it is against the clear weight of the evidence, it is based upon evidence that is false, or it will result in a miscarriage of justice." *Barber v. Whirlpool Corp.*, 34 F.3d 1268, 1279 (4th Cir.1994) (assessment of damages is for the jury).

The Court presumes that the jury followed the instructions given. *Penry v. Johnson*, 532 U.S. 782, 799 (2001); *United States v. Cone*, 714 F.3d 197, 230 (4th Cir. 2013).

## IV.

In this case, both parties renew their Rule 50(a) motions and seek entry of judgment as a matter of law. Neither party requests a new trial on any issue (including damages).[13]

### A. The Verdict in Favor of Plaintiffs

The jury's verdict included a favorable verdict for Triad Packaging on the following breach of contract theories:

1) Did not produce Closing Date Balance Sheet within 60 days of closing (APA, § 2.7(a)(i))
2) Did not provide allocation of purchase price documentation (form 8594) within 90 days of closing (APA, § 2.8)
3) Did not provide Mr. Wetmore post-closing access to information (APA, § 6.11)
4) Breached the implied covenant of good faith and fair dealing

While SupplyOne challenges the legal sufficiency of the damages award to Triad, the jury's damages figure may be justified by the first three findings in that each of these aspects of breach arguably frustrated Triad's ability to prove up its actual damages and hindered Plaintiffs' ability to mitigate damages.[14] As a result of these technical breaches by SupplyOne, various

---

[13] In Plaintiffs' Motion for Judgment Conforming with the Evidence, counsel cites Rule 59, which allows for a new trial as a remedy.

[14] SupplyOne contends that the jury implicitly but necessarily rejected Triad's "prevention" defense since the jury also found Triad breached the APA. (*See* Page 36 of Jury Instructions where the Court explicitly told the jury that the defense was asserted by Triad in connection with SupplyOne's Counterclaim; that Triad contended that it was prevented from performing in some way or ways with

uncertainties arose which undermined the parties' working relationship and their willingness to abide by their respective contractual obligations.

The jury's award may also be supported by the finding that SupplyOne breached the implied covenant of good faith and fair dealing. Damages for a breach of this type flow from the jury's finding that either SupplyOne was not honest in fact or did not observe "reasonable commercial standards of fair dealing." *See generally Maglione, M.D. v. Aegis Family Health Centers*, 607 S.E.2d 286, 291–92 (N.C. Ct. App. 2005) (approving a request for a specific instruction on the implied covenant of good faith and fair dealing; and reciting facts in evidence that supported plaintiff's request and warrant new trial). In evaluating fair dealing, the jury could have considered a broad range of evidence. Although Triad's theory of breach must be based upon SupplyOne's conduct under the APA, the events leading up to its execution, including the transparency of the negotiations and due diligence processes and / or the delay in closing, may properly inform the verdict. Likewise, SupplyOne's actions after execution of the APA such as its reluctance to utilize a third-party accountant to assist with some of the Accounts Receivable and Inventory valuation issues, its attempt to recover rent from Plaintiffs for its storage of the Inventory it determined to be obsolete, or its unwillingness to mediate when suggested by Mr. Wetmore, could also support the damages award. Therefore, it is conceivable that the contractual award in favor of Plaintiffs is based in part on evidence that was not specifically identified in the special interrogatories submitted on the verdict form.[15]

---

respect to certain obligations imposed by the contract on Triad). Rejecting a prevention defense does not necessarily mean that Plaintiffs suffered no actual economic injury as a result of SupplyOne's breaches of the APA.

[15] During the charge conference, the undersigned observed that the verdict forms did not purport to identify each and every theory of potential breach of contract. The Court stated that "this statement of alleged breaches doesn't purport to be global"; "there's a lot of conduct . . . that could be highlighted by either party to show – various things, lack of good faith, lack of best efforts, failure to do such and so and

Triad also asserts in its filings that evidence presented in connection with Mr. Wetmore's Employment Agreement could be a potential basis for the "contractual damages" award since the Employment Agreement was identified as one of the "Transaction Documents" and since Mr. Wetmore's capacity to earn future commissions was intertwined with the purchase itself. However, Mr. Wetmore's individual claim that SupplyOne breached the terms of the Employment Agreement was unequivocally rejected by the jury. Thus, it would be improper for this Court to uphold Triad's verdict and damages award pursuant to evidence regarding income Mr. Wetmore contends he was entitled to receive but was not paid as a result of his work (or continued association) with SupplyOne after the sale occurred. Nevertheless, SupplyOne's dealings with Mr. Wetmore generally could have been considered by the jury on the damages issue.

### B. The Plaintiffs' Monetary Award

As for the amount of Triad's award, the Court must decide whether the jury intended for Triad to recover $211,363 *plus* $123,571 in actual or compensatory damages or whether the jury was simply reciting Mr. Rogers's proposal (in closing) concerning disbursement of the $175,000 held in escrow.

The jury's inclusion of the $123,571 in escrow within the additional handwritten explanation "Total paid to Plaintiff," is properly interpreted as reflecting a portion of Triad's total contractual damages award.[16] The jury had before it in evidence the Escrow Agreement.

---

whether it's material . . ." (5/22/13 Tr. 11). The Court then explained that there was no need to be "hyper technical" about the parties' contentions concerning alleged breaches since all of these things were for argument. *Id*. The parties in fact addressed such matters in their final arguments.

[16] Mr. Rogers advocated for a construction of the jury verdict that would approve of the jury's "total" award without questioning the calculation or categorization. However, prior to seeking clarification from the jury, Mr. Rogers conceded, "based on what's on that sheet, I can't say one way or another whether they awarded a contractual damage and the amounts from the escrow as part of the

While the Escrow Agreement provides that the escrow funds are a portion of the consideration to be paid to the Sellers, it also provides that these funds are apportionable by Buyer to provide a source of funds payable either to Buyer or Seller according to the terms of the APA. The jury has determined that under the evidence presented the proper portion of the escrow funds to be allocated to Plaintiff Seller is $123,571. Plaintiffs' total award then becomes $334,934 (adding the escrow and contractual damages figures together). Arguably, this construction of the verdict gives the most deference to the total damages figure provided by the jury and is consistent with the standard of review under Rule 50. While there was no breach of the Escrow Agreement itself, and no "damages" stemming from the Escrow Agreement itself, the jury's post-verdict explanation represents that the escrow distribution was, in fact, a consideration in its overall calculation of damages.[17]

As to the Promissory Note, the jury recognized that the Promissory Note constituted part of the overall purchase price under the APA and wanted Mr. Wetmore to be paid the agreed-upon proceeds.[18]

The Court is persuaded that in light of the evidence, the way the case was presented to the jury, and in light of the instructions as a whole, the most reasonable interpretation of the jury's verdict is that the "escrow" and "contractual damages" figures merge (defense counsel used the

---

contractual damage." (5/23/13 Tr. 1524).

[17] The jury stated in its handwritten attachment to the Triad Packaging verdict, "Monies requested by ∏ [Plaintiff] in escrow of $123,571 be paid." The jury's finding is consistent with counsel's closing argument, which sought allocation of the escrow fund in the amounts of $123,571 for Plaintiffs and $51,429 to Defendant. When Plaintiffs' counsel introduced the escrow issue in final argument, he did not request that the entire $175,000 be awarded to Plaintiffs as part of the APA's purchase price. In its post-trial filing, SupplyOne contends that the escrow funds should be distributed as the jury indicated. (Def.'s Motion for Entry of Judgment, 2–3).

[18] Plaintiffs requested a special breach of contract interrogatory raising the issue of SupplyOne's payment of (or failure to pay) the purchase price under the APA. Plaintiffs' request was denied in light of the post-closing adjustments to the overall purchase price as contemplated by the APA.

term "coextensive"). (5/23/13 Tr. 1539). Counsel for SupplyOne articulated the most likely scenario:

> What it appears to us that the jury did with respect to SupplyOne's claims is . . . on the true-up portion of this where you take the AR [Accounts Receivable] plus Inventory minus AP [AP Exhaust], the jury essentially deducted $50,000, which accounts for the difference between what SupplyOne requested of $370,000 and what the jury awarded of $320,000. And if that's the case, then there's a – then the jury interpreted the true-up provision in a way that's completely inconsistent with the Plaintiffs' request for payment of the remainder of the escrow agreement.

*Id*. Defendant SupplyOne contends "the jury plainly rejected Plaintiffs' contentions regarding the value of the net current assets delivered on October 8, 2008, when it awarded SupplyOne damages under the APA's true up provision (damages that would not exist if Plaintiffs delivered net current assets in excess of the $727,000 "Minimum Net Current Asset" value under the APA."). (Doc. 151 / Def.'s Reply, 2). The Court finds it entirely rational to conclude that the jury understood that the escrow funds were to be apportioned; and that the apportionment to the Seller, Buyer, or both, was dependent upon the Section 2.7 Post-Closing Adjustments to Purchase Price found by the jury. The Court will not disturb this portion of the jury's verdict.

Given the evidence and arguments, it is highly unlikely that the jury verdicts gave any consideration to any investment increases in the escrow fund. For that reason, and because counsel for both parties had agreed for the Court to provide for disposition of the escrow fund, the Court will order the following: The balance of the escrow fund specified by the jury by implication (and according to Plaintiffs' counsel's final argument) as allocable to Defendant SupplyOne is $51,429. Any net increase (income less fees and expenses) of the escrow fund exceeding the original $175,000 will be allocated between the parties in proportion to their respective receipts of the original principal.

For the reasons stated, the jury's findings are not against the clear weight of the evidence. Here, the jury's "contractual damages" award in the amount of **$211,363** stands. The escrow money remains available for disposition by the Court as a matter of law consistent with the jury's determination of damages and its allocation of the escrow fund. The Note remains payable in accordance with the judgment herein.[19]

### C. Acceleration of the Promissory Note

With respect to Plaintiffs' request for accelerated repayment of the Note, the Note's "Default and Remedies" provision governs. Under the Note, an "Event of Default" occurs when "(a) the Maker [SupplyOne] fails to pay when due any amount due under this Note and such failure is not cured within 15 days following written notice to the Maker from the Holder [Plaintiffs / Triad] *and such failure to pay has not arisen as a result of the Maker exercising its right to set off any such amount against any amount owed to the Maker*. . . ." (Note, ¶ 5) (emphasis added). The Note also contemplates the right of the Holder, **"upon the occurrence of any Event of Default,"** to accelerate payment upon receipt of notice to the Maker (i.e., payment "shall be immediately due and payable"). (Note at 4, ¶ 5). However, the Note authorizes the Maker [SupplyOne] "at any time, to the fullest extent permitted by law, to set off and apply any and all obligations of the Holder [Mr. Wetmore] to the Maker or SupplyOne, Inc. under the Asset Purchase Agreement . . . against any indebtedness owed by the Maker to the Holder under the Note, irrespective of whether the Maker shall have made any demand under the Asset Purchase Agreement." (Note at 4, ¶ 5). This Note provides for an acceleration of maturity upon

---

[19] The portion of the verdict marked with an asterisk ("*This assumes the promissory note of $129,977 be paid") is consistent with what the parties were told after receiving the jury's handwritten attachment to the verdict and with the jury's indication that they were instructed not to consider damages in respect of the Note. After the verdicts were received by the Court, the parties were advised that the Promissory Note would remain due and payable since verdicts were rendered against both parties. (5/23/13 Tr. 1526).

an event of default by the Maker [Defendant], but it also provides for offset against liability by Maker for certain defalcations by Holder under the terms of the APA. Moreover, the Note is otherwise complex, containing provisions for subordination, convertibility and other terms making it anything but a negotiable instrument. Nevertheless, these complications were merged by the agreement of counsel for both sides in this case during the period after the close of the evidence that the Court would provide by Order and Judgment for the disposition of the Note, founded on the proposition that it would become due in full upon the maturity date of October 8, 2013. It will be ordered that the Promissory Note be paid in full by its Maker to its Holder as to its stated principal and all accrued stated interest on October 8, 2013. The Note's clause pertaining to attorneys' fees and other costs will not be invoked.[20] (Note at 4, ¶ 7(b)).

### III.

#### A. Verdict in Favor of SupplyOne

The jury verdict found in favor of SupplyOne on its Counterclaim alleging that Triad breached the APA by failing to satisfy Section 2.7 in three ways:

1) Failing to pay SupplyOne for the "Net Current Asset Deficiency" (APA, § 2.7(a)(i))
2) Failing to reimburse SupplyOne for uncollected Accounts Receivable 180 days after purchase (APA, § 2.7(b))
3) Failing to reimburse SupplyOne for unsold obsolete Inventory 180 days after purchase (APA, § 2.7(b))

(Defendant's Verdict, ). The jury awarded SupplyOne damages in the amount of **$332,605** on its Counterclaim but was not asked to provide separate figures for each of the individual theories

---

[20] Section 7(b) of the Note reads:

"The Maker [SupplyOne] will pay to the Holder [Mr. Wetmore] the amount of all costs and expenses, inclusive of reasonable attorneys fees and court costs, directly and reasonably incurred by the Holder in collecting amounts due and payable under this Note."

16

of breach under Section 2.7. *Id*. When asked to clarify its verdicts, the jury did, in fact, identify damages for SupplyOne as pertaining to APA provisions including the "true-up" provision and Section 2.7, namely, Accounts Receivable, and Inventory. (Plaintiffs' Verdict Attachment). The jury's findings are not against the clear weight of the evidence or based upon evidence that is false. The Court will not disturb the jury's verdict and award of damages absent the potential for a miscarriage of justice. *See Barber*, 34 F.3d at 1279. Such is not the case here.

## V.

In conclusion, reconciliation of the verdicts is for the Court. The jury was instructed that its members should not be concerned with the net effect of the verdicts on the respective breach of contract claims and counterclaims. In addition, the jury was told that its unanimous verdict would be given full effect because the Court is permitted to set off judgments by way of claim and counterclaim against each other so that only a net recovery accrues to the prevailing party. The undersigned presumes that the jury followed these instructions. *See Penry*, 532 U.S. at 799; *Cone*, 714 F.3d at 230.

**IT IS HEREBY ORDERED THAT:**

**1)** Defendant's Renewed Motion for Judgment as a Matter of Law is **DENIED**;

**2)** Plaintiffs' Renewed Motion for Judgment as a Matter of Law is likewise **DENIED**;

**3)** Plaintiffs' Motion for Judgment Conforming with the Evidence is **DENIED**; and

**4)** As set forth in a separate document, Judgment will be entered consistent with the jury verdicts and the instant Memorandum and Order.

Signed: September 26, 2013

Richard L. Voorhees
United States District Judge